# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff<br><br>v.<br><br>DAVID E. BORUCHOWITZ,<br><br>　　Defendant. | Case No.: 2:23-cv-00149-APG-BNW<br><br>**Order (1) Granting Defendant's Motion to Dismiss Counts Two Through Five, (2) Granting Defendant's Motion in Limine to Exclude "Scheme" Evidence, (3) Granting Government's Motion for Leave to File Supplemental Brief, and (4) Granting Defendant's Motion for Leave to File Supplemental Brief**<br><br>[ECF Nos. 48, 66, 72, 75] |

　　The Government has charged defendant David E. Boruchowitz with six criminal counts for false arrest, wire fraud, and perjury. Counts two through five of the indictment charge Boruchowitz with wire fraud under 18 U.S.C. § 1343. These counts allege that Boruchowitz committed wire fraud by making four Facebook posts pertaining to Angela Evans, the former CEO of Valley Electric Association (VEA), in February and December of 2019. In particular, the indictment alleges that Boruchowitz engaged in a "scheme to defraud and fraudulently deprive Evans of her job as the CEO of VEA and to obtain a position on the VEA Board." ECF No. 1 at 4. Boruchowitz moves to dismiss counts two through five under Federal Rule of Criminal Procedure 12(b)(3). ECF No. 48. He also moves in limine to exclude evidence relating to this scheme. ECF No. 66. After a hearing on these motions, the Government and Boruchowitz both sought leave to file supplemental briefs. For the reasons below, I grant the motion to dismiss, the motion in limine, and both motions for supplemental briefing.

/ / / /

/ / / /

## I. LEGAL STANDARD FOR MOTION TO DISMISS

"The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). Under Rule 12(b)(3)(B)(v), a defendant can move to dismiss an indictment for "failure to state an offense." "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense," the court is "bound by the four corners of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). An indictment generally "is sufficient if it sets forth the elements of the charged offense so as to provide the defendant with fair notice of the charges against him and to ensure that the defendant is not placed in double jeopardy." *United States v. Tuan Ngoc Luong*, 965 F.3d 973, 985 (9th Cir. 2020) (simplified). "While an indictment may be insufficient if it fails to allege an essential element of the offense, nevertheless an indictment should be read in its entirety, construed according to common sense and interpreted to include facts which are necessarily implied." *United States v. Drew*, 722 F.2d 551, 552 (9th Cir. 1983) (simplified). "An indictment is sufficient to withstand a motion to dismiss if it contains the elements of the charged offense in sufficient detail . . . to inform the court of the alleged facts so that it can determine the sufficiency of the charge." *United States v. Bernhardt*, 840 F.2d 1441, 1445 (9th Cir. 1988).

## II. DISCUSSION

The federal wire fraud statute provides that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," may be found guilty of wire fraud if they transmit anything in interstate commerce that is meant to execute the scheme. 18 U.S.C. § 1343. The indictment here alleges that there were two objects of Boruchowitz's scheme: "to defraud and fraudulently deprive Evans of her job as the CEO of VEA" and "to obtain a position on the VEA Board." ECF No. 1 at 4.

### A. Scheme to Deprive Evans of Her Job

Boruchowitz presents the same two substantive arguments for granting his motion to dismiss and his motion in limine. First, he argues that the government has not alleged facts showing that Boruchowitz intended to obtain money or property from Evans, which challenges the Government's legal interpretation of the word "obtain" in the wire fraud statute. Second, Boruchowitz argues that Evans's job is not property, which challenges the Government's legal interpretation of the word "property" in the statute.

#### 1. Intending to cause Evans to lose property does not suffice for intending to "obtain" her property.

Boruchowitz argues that the indictment does not allege facts showing that he intended to "obtain" property or money from Evans. ECF No. 48 at 3-4. The Government responds that it has adequately alleged "both the 'defraud' and 'obtain' prongs of the wire fraud statute." ECF No. 63 at 5. The Government asserts that it adequately alleged both that Boruchowitz gained from the scheme and that Evans lost from the scheme because the indictment "alleges that Boruchowitz both obtained money or property through the fraud scheme and defrauded (cheated) Evans out of money or property." *Id.* at 6.[1]

Under *Kelly v. United States*, property deprivation must be an object of the alleged scheme, not an "incidental byproduct" of it. 590 U.S. 391, 402 (2020). Relying on *Kelly*, Boruchowitz argues that the indictment does not allege that he intended to obtain money or property because depriving Evans of her job was merely an "incidental byproduct" of the alleged scheme. ECF Nos. 48 at 4; 65 at 5. He argues that "[i]f the object of the scheme was for

---

[1] The Government does not claim that Boruchowitz's "obtain" argument exceeds the four corners of the indictment, even though it claims that his "property" argument does (discussed below).

3

Boruchowitz to obtain money or property for himself, then the loss to the alleged victim is merely incidental to the scheme." ECF No. 65 at 5.

I disagree. Depriving Evans of her job was more than an "incidental byproduct" of the alleged scheme. The indictment specifically alleges that one of the scheme's objects was to "deprive Evans of her job as the CEO of VEA." ECF No. 1 at 4. Unlike in *Kelly*, the loss of Evans's job was not incidental to Boruchowitz's scheme or merely an implementation cost of some other objective. It was central to the alleged scheme. The mere fact that Boruchowitz allegedly intended to obtain money or property for himself does not imply that he could not also have intended to deprive Evans of her job. Obtaining the victim's money or property must be "an object" of the defendant's dishonesty, not the only object. *See Kelly*, 590 U.S. at 393. So if Evans's job counts as property (a separate issue discussed below), then property deprivation was an object of Boruchowitz's alleged scheme under *Kelly*.

The question remains whether Boruchowitz is correct that the indictment does not adequately allege that he intended to "obtain" money or property from Evans. Under settled precedent, "intent to defraud" is an element of wire fraud. *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013). Intent to defraud requires an intent to "deceive" and an intent to "deprive" or "cheat" someone of money or property. *United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020). The Government contends that the "intent to defraud" element of wire fraud "does not require that the perpetrator 'obtain money or property' as long as the intent is to cause loss of money or property to another through deception." ECF No. 63 at 5. But the Government does not cite any authority for this proposition.[2]

---

[2] In adjacent sentences, the Government cites *United States v. Woods*, 335 F.3d 993 (9th Cir. 2003). *See* ECF No. 63 at 5, nn.12, 13. But this case is inapposite. In *Woods*, the defendant ran a magazine telemarketer operation that tried to get people to pay for a "guaranteed" chance to

4

Courts of Appeals broadly agree that a defendant does not need to intend to obtain property for his own benefit to be guilty of wire fraud, because the defendant may intend the property to go to others.[3] But Courts of Appeals are divided on the specific question raised here: whether wire fraud merely requires intent to deprive the victim of property (to cause a property loss), or whether wire fraud also requires intent to obtain the property, be it for the defendant, for co-schemers, or for some innocent third party.[4]

---

win expensive prizes. They were never told that they were essentially being duped into buying magazines. They were subsequently told they had only a miniscule chance in winning something other than a cheap watch. The Ninth Circuit rejected the defendant's argument that the government needed to "prove a specific material false statement on which the jury unanimously agreed." *Id.* at 999. The issue in *Woods* was whether the materiality requirement (that the deception had a tendency to influence the victim to part with money or property) required proving a specific falsehood that was material. The court said no. *Id. Woods* has nothing to do with the meaning of "obtain" in § 1343.

[3] *See United States v. Inzunza*, 638 F.3d 1006, 1018 (9th Cir. 2011) (holding that "private gain is not an 'implied' or 'necessary' element of honest services fraud"); *United States v. Gatto*, 986 F.3d 104, 124 (2d Cir. 2021) (holding that "a victim's loss need not flow directly *to* the defendant for the defendant to be guilty of wire fraud"); *Lombardo v. United States*, 865 F.2d 155, 159–60 (7th Cir. 1989) (noting that though "most schemes to defraud are designed to benefit the schemers personally," this fact "does not transform the characteristic of personal pecuniary benefit into an element of the crime [of wire fraud] nor make defendants' conduct less culpable").

[4] *Compare United States v. Walters*, 997 F.2d 1219, 1227 (7th Cir. 1993) (noting that "[b]oth the 'scheme or artifice to defraud' clause and the 'obtaining money or property' clause of § 1343 contemplate a transfer of some kind" and that "deprivation is a necessary but not a sufficient condition of mail fraud"); *United States v. Baldinger*, 838 F.2d 176, 180 (6th Cir. 1988) (finding that the mail fraud statute, which has virtually identical language to the wire fraud statute, "was intended by the Congress only to reach schemes that have as their goal the transfer of something of economic value to the defendant") (internal quotation marks omitted), *with United States v. Hedaithy*, 392 F.3d 580, 602 n.21 (3d Cir. 2004) ("[A] mail fraud violation may be sufficiently found where the defendant has merely deprived another of a property right."); *United States v. Males*, 459 F.3d 154, 158 (2d Cir. 2006) (agreeing with the Third Circuit that "a mail fraud violation may be sufficiently found where the defendant has merely deprived another of a property right," and holding that "it is sufficient that a defendant's scheme was intended to deprive another of property rights, even if the defendant did not physically 'obtain' any money or property by taking it from the victim"); *United States v. Welch*, 327 F.3d 1081, 1106 (10th Cir. 2003) ("[T]he intent to defraud does not depend upon the intent to gain, but rather, on the intent to deprive."); *United States v. Stockheimer*, 157 F.3d 1082, 1087–088 (7th Cir. 1998) ("An intent to defraud does not turn on personal gain ... all that matters is that [the defendant] intended to

5

The Supreme Court has not yet considered this issue directly, but it has provided some guidance. Though § 1343 is phrased as a disjunctive to criminalize schemes "to defraud" or "to obtain money or property" through deception, the Supreme Court has construed it "as a unitary whole" to hold that the "money-or-property requirement of the latter phrase also limits the former." *Kelly*, 590 U.S. at 398. Therefore, the wire fraud statute "bar[s] only schemes for obtaining property." *Id.* at 404. "[S]ave for bribes or kickbacks . . ., a [defendant's] fraudulent schemes violate [§ 1343] only when, again, they are 'for obtaining money or property.'" *Id.* at 399 (quoting 18 U.S.C. § 1343). The Court in *Kelly* quotes an earlier case stating that the wire fraud statute prohibits only "schemes to deprive the victim of money or property." *Id.* at 398 (simplified). But the Court's opinion focuses on § 1343's statutory language by consistently and frequently couching its holding in terms of "obtain," not "deprive."[5] The Court thus construes the "money or property requirement" that modifies the "scheme to defraud" disjunct as requiring that the defendant intend to "obtain" money or property. Even a scheme to defraud must be for obtaining money or property. So the Government's assertion that the wire fraud statute does not require that the perpetrator obtain money or property contradicts *Kelly*'s reading of the statute.[6]

---

inflict a loss."). *See generally Ctr. for Immigr. Stud. v. Cohen*, 410 F. Supp. 3d 183, 192 n.2 (D.D.C. 2019), *aff'd*, 806 F. App'x 7 (D.C. Cir. 2020) (observing this circuit split and noting that the Ninth Circuit agrees with the Sixth Circuit and the Seventh Circuit in *Walters*).

[5] *See Kelly*, 590 U.S. at 393 (§ 1343 "target[s] fraudulent schemes for obtaining property"); *id.* ("Under settled precedent, [the defendants] could violate [§ 1343] only if an object of their dishonesty was to obtain the [victim's] money or property."); *id.* at 399 ("As the Government recognizes, the deceit must also have had the 'object' of obtaining the [the victim's] money or property."); *id.* at 404 ("Because the scheme here did not aim to obtain money or property, [the defendants] could not have violated the federal-program fraud or wire fraud laws.").

[6] Though the Government does not cite it in its briefing, at the hearing on the motion to dismiss the Government seemed to rely on the statement in *Woods* that wire fraud "can take the form of (1) a scheme or artifice to defraud, or (2) obtaining money or property by means of false or fraudulent pretenses, representations, or promises," and that "[e]ach constitutes an independent and alternate basis for conviction." 335 F.3d at 1000 n.4 (citations omitted). To the extent that this dictum in *Woods* is reconcilable with *Kelly*, I do not read it to say that the "obtain money or

      Moreover, the Ninth Circuit has held that § 1343 "explicitly require[s] an intent to obtain money from the one who is deceived by means of false or fraudulent pretenses, representations, or promises." *Monterey Plaza Hotel Ltd. P'ship v. Loc. 483 of Hotel Emps. & Rest. Emps. Union, AFL-CIO*, 215 F.3d 923, 926 (9th Cir. 2000) (simplified). In *Monterey Plaza Hotel*, a hotel accused a union of engaging in a "coordinated corporate campaign" designed to cause the hotel's economic ruin rather than advance any legitimate union bargaining agenda. *Id.* at 925. As part of this campaign, a union agent allegedly defamed the hotel by incorrectly stating during a television interview that the federal government had found that the hotel illegally fired two hotel employees in retaliation for organizing union activities. *Id*. The Ninth Circuit held that the hotel failed to state the requisite predicate acts for wire fraud because "[t]he Union did not *obtain* property by deceiving the Hotel or its customers; the Union was simply carrying on a strategy in a protracted labor dispute." *Id.* at 926-27. The court accepted, for the sake of argument, that the hotel's goodwill could be a recognized property right in certain contexts, such as in certain lawsuits under 42 U.S.C. § 1983. *Id.* at 926. But the court reasoned that "Section 1983 provides a remedy for *deprivation* of federal rights, whereas the mail and wire fraud statutes, §§ 1341 and 1343, prohibit use of the mails and wires to *obtain* money or property *from the one who is deceived.*" *Id.* The court concluded that "the Hotel has failed to prove that the Union sought to

---

property" requirement of the second disjunct is "independent" of the first disjunct. Indeed, the Ninth Circuit has recently recognized that these two disjuncts are not completely independent. *See Miller*, 953 F.3d at 1102-03 (aligning Ninth Circuit law with *Shaw v. United States*, 580 U.S. 63 (2016) to require both an intent to deceive and an intent to cheat the victim of money or property under § 1343, not merely one or the other). Instead, "the second phrase [i.e., a scheme or artifice to obtain money or property by means of false or fraudulent pretenses] simply modifies the first by making it unmistakable that the statute reached false promises and misrepresentations as to the future as well as other frauds involving money or property." *Cleveland v. United States*, 531 U.S. 12, 26 (2000) (simplified). The difference between the disjuncts comes in the kind of deception involved, not in whether the defendant intends to obtain property by the deception.

7

*obtain* that property through deceptive means." *Id.* Therefore, under *Monterey Plaza Hotel*, intending mere loss of property (e.g., destroying a business's goodwill) does not suffice for intending to obtain the property.

      Here, the indictment alleges that Boruchowitz intended to "fraudulently deprive Evans of her job" as part of the scheme to defraud. ECF No. 1 at 4. But the indictment does not allege facts showing that Boruchowitz intended to obtain money or property from the one who is deceived. Like the defendants in *Monterey Plaza Hotel*, Boruchowitz allegedly intended to cause a property loss to Evans by getting her fired from her job. Evans's job is like the goodwill in *Monterey Plaza Hotel* because Boruchowitz allegedly intended to cause Evans to lose the job. But there is no allegation that he intended to take the job from Evans, cause it to go to any particular person, or otherwise cause a "wrongful transfer" of the job to someone. *See Monterey Plaza Hotel*, 215 F.3d at 927. As alleged in the indictment, it is consistent with Boruchowitz's intentions that the VEA fire Evans and eliminate the position of CEO altogether.

      Therefore, even assuming Evans's job is her property, the indictment did not allege facts showing that Boruchowitz intended to obtain that job as required under *Monterey Plaza Hotel*, even though he allegedly intended to deprive her of it. Boruchowitz's alleged conduct mirrors that in *Monterey Plaza Hotel* because he "was simply carrying on a strategy in a protracted [personal] dispute. [Boruchowitz's] conduct may have been vexatious or harassing, but it was not acquisitive." *See id.* at 927. The purpose of the wire fraud statute is to punish "wrongful transfers of property from the victim to the wrongdoer, not to salve wounded feelings." *Id.* at 927. The wire fraud statute thus does not "set standards of disclosure and good government for local and state officials," or for all sharp-elbowed campaigns to change an organization's governance. *See Kelly*, 590 U.S. at 403 (simplified).

8

With respect to Evans's job, the indictment fails for a second independent reason. The Ninth Circuit holds that "the intent must be to obtain money or property *from the one who is deceived*." *United States v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989) (emphasis added). As other district courts have observed, *Lew* states a "convergence" requirement for wire fraud: in a scheme to defraud, the schemer must intend to deceive the same person who the schemer intends to cheat. *See United States v. Holmes*, No. 5:18-CR-00258-EJD, 2020 WL 666563, at *16 (N.D. Cal. Feb. 11, 2020). Here, the indictment does not allege that Boruchowitz intended to deceive Evans. And the Government admitted during the hearing on the motion that Evans could not have been deceived because she knew the truth. So this part of the indictment does not state an offense because the person Boruchowitz intended to cheat (Evans) was not the person that Boruchowitz intended to deceive (either the VEA board or VEA members).

### 2. Evans' at-will employment is not property.

Boruchowitz next argues in his motion to dismiss that Evans's job is not "property" under the wire fraud statute because at-will employment is not a "traditional property interest" under *Ciminelli v. United States*, 598 U.S. 306, 316 (2023). He suggests that this is an independent basis for dismissing the indictment. The Government responds that I cannot consider information outside the indictment on a Rule 12 motion and that the indictment does not allege at-will employment. The Government contends that the indictment properly alleges wire fraud because it tracks the language of the wire fraud statute, including the allegation that money and property were objects of the scheme. The Government also argues that courts "have routinely upheld that a job is considered money or property under the federal fraud statutes." ECF No. 63 at 6. Boruchowitz replies that (1) failure to address Evans's status as an at-will employee would allow a legally deficient indictment to proceed and prejudice him at trial and (2) the three cases

the Government cites are inapposite.  Neither party disputes that Evans was an at-will employee.[7]

Additionally, in his motion in limine, Boruchowitz argues that "scheme" evidence should be excluded as irrelevant and unduly prejudicial. ECF No. 66 at 2.  Waiting to address the nature of Evans's employment until after the Government presents its case-in-chief would "unfairly taint the jury's decision-making process on Counts One and Six" and cause undue prejudice. *Id.* The Government responds that at-will employment is not at issue here because the indictment alleges that Boruchowitz intended to deprive Evans of her "job," not of "at-will employment," and to obtain a VEA Board position.  The Government states that it has "never argued that the existence or nonexistence of an at-will employment relationship between Ms. Evans and VEA is either relevant to or dispositive of this fraud case." *Id.* at 2.

I will not dismiss the indictment based on whether Evans's "job" was "at-will" because the Government is correct in its procedural Rule 12 argument.  The indictment alleges that Boruchowitz deprived Evans of her "job," which on its face might include employment that is not at-will.  Boruchowitz does not argue, and I see no basis for concluding, that a "job" could not count as one's property in certain factual circumstances.  But I will still consider Boruchowitz's "property" argument in ruling on the motion in limine because if Evans's at-will employment is not "property," then evidence of a scheme to deprive her of it is either irrelevant to the wire fraud charges or would at least require a limiting instruction advising the jury it could not find Boruchowitz committed wire fraud based on depriving Evans of her job.

---

[7] *See* ECF No. 62 at 7 (Government's brief) ("Furthermore, even though Evans was an at-will employee, VEA sending her a termination letter amounts to a 'verbal act' with 'independent legal significance.'").

10

Though one can commit a variety of wrongs through wire transmissions, the wire fraud statute criminalizes only "wronging one in his property rights." *Cleveland v. United States*, 531 U.S. 12, 19 (2000) (simplified) (noting that § 1341 and § 1343 "protect[] property rights only"). The wire fraud statute is "limited in scope to the protection of property rights." *McNally v. United States*, 483 U.S. 350, 360 (1987); *see also Carpenter v. U.S.*, 484 U.S. 19, 25 (1987) (noting that what matters under § 1343 is whether the interest is a property interest, not whether it is "tangible" or "intangible"). Congress has recognized one exception to this rule for deprivation of "the intangible right of honest services," which is irrelevant here. *See* 18 U.S.C. § 1346. Building on *McNally*, *Carpenter*, and *Cleveland*, the Supreme Court held in *Ciminelli* that "the wire fraud statute reaches only traditional property interests." 598 U.S. at 316.

Continued at-will employment is not a traditional property interest of the employee under *Ciminelli*.[8] I could find no evidence that the adopters of the wire fraud statute would have viewed at-will employment as a property interest. And under Nevada law, "merely having an expectation of continued employment does not create a property interest" absent a showing that termination must be for cause, generally by looking to a contract or state law. <u>Pressler v. City of Reno</u>, 50 P.3d 1096, 1098–99 (Nev. 2002); *see also* <u>Martin v. Sears, Roebuck & Co.</u>, 899 P.2d 551, 553 (Nev. 1995) (noting that at-will employment can be "terminated without liability by either the employer or the employee").By comparison, Fourteenth Amendment procedural due process caselaw recognizes property interests that do not "resemble any traditional conception of property." *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 766 (2005). But even under Fourteenth Amendment procedural due process, "[i]f under state law, employment is at-

---

[8] The following considerations equally apply to the post-termination future earnings that an at-will employee expects to make. An at-will employee's entitlement to those earnings is only as strong as her entitlement to the at-will position that gives her those earnings.

11

will, then the claimant has no property interest in the job."[9] *Armstrong v. Reynolds*, 22 F.4th 1058, 1067 (9th Cir. 2022) (simplified); *see also* <u>Martin</u>, 899 P.2d at 554 ("[A]ll employees in Nevada are presumptively at-will employees."). Therefore, if one lacks a property interest in at-will employment under the broad and non-traditional conception of property interests in the civil rights context, then at-will employment would not count as property under the stricter "traditional" notion of property in the wire fraud statute.

The cases the Government relies on to argue that Evans's job is property under the wire fraud statute are unpersuasive. *See United States v. Doherty*, 867 F.2d 47 (1st Cir. 1989); *United States v. Douglas*, 398 F.3d 407 (6th Cir. 2005); *United States v. Sorich*, 523 F.3d 702 (7th Cir. 2008). *Doherty*, *Douglas*, and *Sorich* do not address at-will employment and were decided before *Ciminelli*, so they do not apply the "traditional property interest" standard. These cases are also factually dissimilar to the present case. In *Doherty*, the defendants schemed to promote unqualified police officers by stealing service exams, which "deprive[d] the [state] of money, in the form of salary payments." 867 F.2d at 51. In *Douglas*, the defendants schemed to employ two unqualified auto workers, and the court held that the "right to compete guaranteed by the [auto workers'] collective bargaining agreement" was a property interest for purposes of the mail

---

[9] So even under the broader conception of "property" for Fourteenth Amendment procedural due process, a state university teacher hired for a fixed term of one year does not have a property interest in a second year of employment. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 578 (1972). As the Supreme Court has held, to "have a property interest" in a government benefit, the person must have a "legitimate claim of entitlement to it," which is "more than an abstract need or desire for it" and "more than a unilateral expectation of it." *Id.* at 577. The mere fact that most teachers were in fact rehired on a year-to-year basis did not give rise to a property interest for those teachers. *Id.* at 578 n.16. By comparison, the Court held in a companion case that a state university teacher whose employment amounted to "de facto tenure" had a property interest cognizable under Fourteenth Amendment procedural due process. *Perry v. Sindermann*, 408 U.S. 593, 599-600 (1972) (observing that the record showed an unwritten "understanding" of continued employment).

fraud statute. 398 F.3d at 418.  In *Sorich*, the defendants "cheated [a] city out of hundreds of millions of dollars" by "setting up a false hiring bureaucracy" to place political allies, many of whom were unqualified, into various city positions. 523 F.3d at 712-13.  These cases involve defendants scheming to place persons into jobs for which they were unqualified, and the courts found either that the defendants deprived an employer of money or deprived the victims of the benefit of a contractual bargain.  Nothing similar is alleged here.[10]

In addition, the Government argues that Boruchowitz not only deprived Evans of her job, but that he deprived the VEA of Evans's employment.  As it argues, "Evans's job was property and money to VEA because VEA employed Evans." ECF No. 72 at 6.  Putting aside the fact that the indictment alleges that Boruchowitz deprived Evans, not the VEA, of Evans's job, I am not persuaded for two reasons.  First, if Evans does not have a property interest in her continued at-will employment, then her employer, the VEA, does not have a property interest in her continued at-will employment either.  If Evans were to quit her VEA job for any reason the VEA would have no property-based claim against her.

Second, perhaps the Government's argument is that Boruchowitz deceived the VEA members, and the VEA lost "property" because the board terminated Evans based on the VEA

---

[10] The best case for the Government is *Sorich*, where the Seventh Circuit held that "jobs are property for the purposes of mail fraud." 523 F.3d at 713.  But it did so because it concluded that "the jobs at issue" in that case were akin to contracts involving a "promise to pay for services rendered" for the city, as opposed to a mere regulatory interest of the city that does not count as a property interest. *Id.*  So cheating the city out of the benefit of that contractual bargain by hiring unqualified persons deprived the city of property.  But the Seventh Circuit did not hold that an employee, as opposed to the city, had a property interest in the government positions, and the court expressly held that the defendants cheated the city, not an actual or potential employee.  It is unclear whether the jobs in *Sorich* were at-will.  But even if the Seventh Circuit meant to hold that a job is property of the employee in all circumstances, *Ciminelli* points to a different conclusion in the case of at-will employment.

13

members' misguided perceptions of Evans.[11] But this argument is indistinguishable from the one that the Supreme Court rejected in *Ciminelli*. In that case, Ciminelli participated in a scheme to rig the bidding process for state-funded development contracts in favor of his construction company. 598 U.S. at 310. Ciminelli obtained a multi-million-dollar contract from Fort Schuyler (a state-funded private entity) through this fraud, but the Government did not allege that Ciminelli cheated Fort Schuyler out of money or the benefit of the contractual bargain. *Id.* Instead, the Government alleged that Ciminelli deprived Fort Schuyler of "economically valuable information" for "assess[ing] . . . the benefits or burdens" of the contract with Ciminelli, the "quality of goods or services received," or the "economic risks of the transaction." *Id.* at 311 (internal quotation marks omitted). The Supreme Court rejected this "right to control" theory of property under the wire fraud statute. *Id.* at 311-12. Contrary to the right-to-control theory, access to "potentially valuable economic information" for making informed decisions in awarding contracts is not a property interest that had "long been recognized as property when the wire fraud statute was enacted." *Id.* at 314 (simplified). The right-to-control theory improperly expanded the federal fraud statutes beyond property fraud as defined at common law and beyond protection of "traditional property interests." *Id.* at 309.

Here, the Government is similarly arguing that Boruchowitz deprived the VEA and its members of valuable information for assessing the benefits or burdens of maintaining Evans as an employee. *See id.* at 310. Even if Boruchowitz did not tell the truth about the circumstances surrounding Evans's arrest, the VEA has no property interest in that information, just like Fort Schuyler had no property interest in information about Ciminelli's suspicious dealings. In

---

[11] *See* ECF No. 48-2 at 2 (letter terminating Evans in part because "VEA's members have lost confidence in you," even though the VEA "stood by" Evans and "diligently attempted to direct conversations away from this subject matter").

14

terminating Evans, the VEA was exercising its right to fire her, just like Fort Schuyler was exercising its right to grant Ciminelli development contracts. In neither case did the Government argue that the victim (Fort Schuyler or the VEA) suffered a tangible loss beyond the abstract right to have better information in order to control who got what. Because *Ciminelli* rejected this theory of property, the VEA and its members have no traditional property interest merely in having Evans as an at-will employee. And to the extent the VEA had to expend funds to find and train a replacement, the indictment does not allege those expenditures were an object of Boruchowitz's scheme rather than an incidental byproduct; nor does it allege he obtained that money from VEA or its members.

Therefore, the indictment does not adequately allege that Boruchowitz intended to "obtain" property from Evans under either *Monterey Plaza Hotel* or *Lew*. And even if the Government adequately alleged that Boruchowitz intended to "obtain" Evans's job, I would still grant Boruchowitz's motion in limine and exclude evidence with respect to Evans's job if offered to show that Boruchowitz intended to obtain money or property, because Evans's job is not "property" under the wire fraud statute.

### B.  *Scheme to Obtain a Position on the VEA Board*

This leaves the other allegation in the indictment that Boruchowitz intended to "obtain a position on the VEA Board" as part of his scheme to defraud. ECF No. 1 at 4. The indictment says little else about the VEA Board seat aside from describing how the VEA Board is elected and removed by VEA members.[12] *See id.* at 3. In its brief opposing the motion to dismiss, the Government argues that "Boruchowitz filed and obtained legal process under false and

---

[12] In the perjury charge in count six, the indictment asserts that K.J. had demanded the VEA board members resign. ECF No. 1 at 9.

fraudulent pretenses by, among other things, failing to disclose his personal interest in Evans' arrest so he could assume a position on her company's (VEA's) board of directors." ECF No. 46 at 5-6. The Government represented at the hearing that the board seat is a paid position.

The sitting board members thus may have a property interest in their seats, which according to the indictment are elected positions subject to recall and thus not at-will. ECF No. 1 at 3. But to cheat the sitting board members out of their seats and obtain a seat for himself, Boruchowitz would have to deceive the voting VEA members, not the sitting board members. Thus, there is a lack of convergence between who is deceived (voters) and who is cheated (seat holders) under this theory. *See Lew*, 875 F.2d at 221.

If the Government is contending that the VEA has a property interest in money it pays to board members, it is not clear why Boruchowitz would cheat the VEA out of money merely by being elected to the board and collecting payment. There are no facts that would suggest he is unqualified to serve on the board, or that he would be paid more than the sitting members. This argument boils down to another right to accurate information or right to control theory that will not support a wire fraud charge. *See United States v. Milheiser*, 98 F.4th 935, 942 (9th Cir. 2024) (noting that "even if misrepresentations result in money or property changing hands, they still may not necessarily constitute fraud," and observing that the Ninth Circuit has "rejected the notion that depriving an individual of accurate information alone constitutes fraud" because loss of the "right to make an informed business decision" does not constitute loss of "something of value" (simplified)).[13]

---

[13] *Cf. Doherty*, 867 F.2d at 56 (state deprived of money because, due to scheme to defraud, it paid unqualified police officers a salary); *Douglas*, 398 F.3d at 418 (auto workers deprived of property because, due to scheme to defraud, unqualified persons were installed in positions violating the auto workers' contractually guaranteed "right to compete" for those positions).

16

Finally, to the extent the Government is contending that the VEA members have a property interest in the board seat, the indictment alleges that VEA members had "the right to vote to elect or remove/recall members of the VEA Board . . . ." ECF No. 1 at 3.  Though VEA members may have a property interest in their votes, they do not have a property interest merely in potentially valuable information that they may use in choosing how to cast their votes. *See Ciminelli*, 598 U.S. at 314.  And even if the VEA members, as paying customers, are ultimately indirectly financially responsible for paying the salary that would go to Boruchowitz as a board member, they would pay whoever occupied that board seat, so this is just another right to control theory.  Therefore, based on the factual allegations in the indictment, Boruchowitz did not intend to cheat the persons that he intended to deceive.

### C. Summary

In conclusion, the indictment (a) does not allege facts demonstrating that Boruchowitz intended to obtain Evans' job as required under *Monterey Plaza Hotel* and (b) does not allege facts demonstrating that Boruchowitz intended to cheat the same person or persons that he deceived under *Lew*.  Therefore, I dismiss counts 2 through 5 of the indictment because they fail to allege facts demonstrating that Boruchowitz intended to obtain money or property from the victims deceived as required under *Monterey Plaza Hotel* and *Lew*.

I also grant Boruchowitz's motion in limine to exclude evidence of a scheme to deprive Evans of her job or to obtain a VEA Board seat, to the extent it is offered to show that Boruchowitz intended to obtain money or property,[14] because that evidence is irrelevant to a wire fraud charge for the same reasons.  And even if the Government adequately alleged that

---

[14] I am not ruling that no evidence regarding the scheme can be presented at trial because that evidence may be relevant to the remaining charges.

Boruchowitz intended to "obtain" Evans's job, I would still grant Boruchowitz's motion in limine in part because the Government has not adequately alleged that Boruchowitz intended to obtain "property" from Evans. Accordingly, I would either exclude evidence of a scheme to deprive Evans of her job, to the extent it is offered to show that Boruchowitz intended to obtain money or property, or instruct the jury that it could not find Boruchowitz committed wire fraud based on depriving Evans of her job, because at-will employment is not property under the wire fraud statute.

### III. CONCLUSION

I THEREFORE ORDER that:

- Boruchowitz's motion to dismiss counts two through five of the indictment **(ECF No. 48) is GRANTED**. Those counts are dismissed.
- Boruchowitz's motion in limine to exclude "scheme" evidence **(ECF No. 66) is GRANTED**.
- The Government's motion for leave to file supplemental brief **(ECF No. 72) is GRANTED**.
- Boruchowitz's motion for leave to file supplemental brief **(ECF No. 75) is GRANTED**.

DATED this 18th day of December, 2024.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE