# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:23-cr-00149-APG-BNW |
| Plaintiff | **Order Granting in Part Government's Motion for Reconsideration** |
| v. | |
| DAVID E. BORUCHOWITZ, | [ECF No. 84] |
| Defendant | |

The Government has charged defendant David E. Boruchowitz with six criminal counts for false arrest, wire fraud, and perjury.  Counts two through five of the indictment charge Boruchowitz with wire fraud under 18 U.S.C. § 1343.  These counts allege that Boruchowitz made four Facebook posts about Angela Evans, the former CEO of Valley Electric Association (VEA), in February and December of 2019.  In particular, the indictment alleges that Boruchowitz engaged in a "scheme to defraud and fraudulently deprive Evans of her job as the CEO of VEA and to obtain a position on the VEA Board." ECF No. 1 at 4.

After briefing and oral argument, I granted Boruchowitz's motion to dismiss the wire fraud counts and granted Boruchowitz's motion in limine to exclude evidence of the alleged scheme to defraud. ECF No. 79.  I held that (1) a defendant charged with wire fraud must intend to "obtain" property from a person the defendant deceives, not merely intend to cause that person to lose property, and (2) "property" includes only traditional property interests.  Based on these legal principles, I concluded that the indictment failed to state a wire fraud violation because it did not adequately allege that Boruchowitz intended to obtain property from Evans or the VEA by deceiving them.  I also concluded that Evans's job was not her "property" because an at-will employee's job does not constitute a property interest.

The Government now moves for reconsideration of the dismissal order. ECF No. 84.  In its motion, the Government finally substantively addresses the relevant issues in a way it had not previously done in its briefs or at oral argument.  Boruchowitz opposes reconsideration.

For the reasons below, I see no reason to change my legal conclusions regarding the meaning or significance of "obtain" or "property" under the wire fraud statute.  Nor do I reverse my decision to dismiss the wire fraud charges with respect to a scheme to deprive Evans of her job.  However, I reverse my dismissal of the wire fraud charges with respect to a scheme to obtain a board position, so I will not dismiss the charges as to that scheme.  But I do so on the narrow grounds detailed below.  Accordingly, I will allow the Government to present evidence of a scheme to obtain a VEA board position, but not evidence of a scheme to deprive Evans of her job, to the extent it is offered to show that Boruchowitz intended to obtain money or property.

## I.    LEGAL STANDARDS

Though the Federal Rules of Criminal Procedure do not expressly authorize the filing of motions for reconsideration, the Ninth Circuit follows other circuit courts in allowing motions for reconsideration in criminal cases. *See United States v. Martin*, 226 F.3d 1042, 1047 n.7 (9th Cir. 2000) ("[P]ost-judgment motions for reconsideration may be filed in criminal cases."); *United States v. Kim*, No. CR 13-00303 SOM, 2022 WL 17820902, at *1 (D. Haw. Dec. 20, 2022) (collecting cases).  Courts in this circuit apply Civil Rules 59(e) and 60(b) to evaluate motions for reconsideration in criminal cases. *See, e.g.*, *United States v. Amezcua*, No. 1:93-CR-5046-AWI-1, 2015 WL 5165235, at *1 (E.D. Cal. Sept. 2, 2015), *aff'd*, 670 F. App'x 454 (9th Cir. 2016).

Under Rule 59(e), "[r]econsideration is appropriate if the district court . . . committed clear error or the initial decision was manifestly unjust . . . ." *Sch. Dist. No. 1J, Multnomah Cnty.,*

1  *Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  Rule 60(b) similarly permits a motion

2  for reconsideration due to "mistake, inadvertence, surprise, . . . excusable neglect," or "any other

3  reason that justifies relief." Fed. R. Civ. P. 60(b).  The party seeking reconsideration "must state

4  with particularity the points of law or fact that the court has overlooked or misunderstood." LR

5  59-1(a).  Motions for reconsideration are disfavored, and a movant may not repeat arguments

6  already presented unless "necessary to explain controlling, intervening law or to argue new

7  facts." LR 59-1(b).

8  **II.    DISCUSSION**

9       The indictment alleges that Boruchowitz's scheme had two objects: "to defraud and

10  fraudulently deprive Evans of her job as the CEO of VEA and to obtain a position on the VEA

11  Board." ECF No. 1 at 4.  The Government moves for reconsideration of the dismissal order with

12  respect to both objects of the alleged scheme.

13       ***A.    Scheme to Deprive Evans of Her Job***

14          **1.    Motion to Dismiss**

15       In the dismissal order, I held that the indictment adequately alleged that Boruchowitz

16  intended to deprive Evans of property. ECF No. 79 at 10.  I did so because the face of the

17  indictment did not rule out that Evans's "job" could count as her property.[1] *Id.*  However, I held

18  that intent to obtain property is an element of wire fraud and that intending mere loss of property

19  does not suffice for intending to obtain property. *Id.* at 6-8.  I concluded that, even assuming

20  Evans's job counted as Evans's "property," there was no allegation that Boruchowitz intended to

21  

---

22  [1] Boruchowitz contends that Evans held an "at will" position, and the Government does not
dispute that.  However, the face of the indictment does not allege that so, in theory, the position

23  may not have been "at will."  I warned the Government that if it is determined that the position
was, in fact, "at will," it could not count as property for purposes of the wire fraud statute. ECF
No. 79 at 10-15.

1  take the job from Evans, to cause it to go to any particular person, or otherwise to cause a

2  wrongful transfer of the job to someone, as required under *Monterey Plaza Hotel Ltd.*

3  *Partnership v. Local 483 of Hotel Employees & Restaurant Employees Union, AFL-CIO*, 215

4  F.3d 923 (9th Cir. 2000). *Id.* at 8. So I dismissed the indictment.

5          Relying on *United States v. Ali*, 620 F.3d 1062 (9th Cir. 2010), the Government argues

6  that "it is only necessary that the scheme be intended to deprive the property holder of the

7  property" and that the property need not also be "acquired or obtained." ECF No. 84 at 14-15.

8  The Government also argues that my reading of the indictment rested on unnecessary factual

9  assumptions. *Id.* at 23. For instance, the Government claims it can prove its case by showing

10 that Boruchowitz intended to take control of the board of directors and thereby "make the

11 VEAMC founder the CEO, or maneuver to become CEO himself," which would satisfy the

12 obtaining requirement. ECF No. 87 at 8. Boruchowitz responds that *Monterey Plaza Hotel* is

13 controlling and that the Government misreads *Ali*. ECF No. 86 at 6-7.

14         In *Ali*, the defendants purchased "authorized education reseller" companies that qualified

15 for discounted versions of Microsoft software. 620 F.3d at 1064-65. The defendants obtained the

16 discounted software from these authorized resellers and sold it to unauthorized users who did not

17 qualify for the education discount. *Id.* at 1065. The Ninth Circuit held that tricking Microsoft

18 into providing the defendant discounted software deprived Microsoft of "property in its hands"

19 because it "deprived Microsoft of revenue." *Id.* at 1070-71. As the Ninth Circuit explained,

20 property need not "actually be taken directly from the victim," and "depriving a victim of

21 property rightfully due is enough" to sustain a wire fraud conviction. *Id.* at 1070 (citing

22 *Pasquantino v. United States*, 544 U.S. 349, 355-56 (2005)). The Ninth Circuit relied on the

23 Supreme Court's holding in *Pasquantino* that fraud includes "a scheme to deprive a victim of his

entitlement to money" or a "scheme to deprive [the victim] of money legally due." 544 U.S. at 356.

The Government's arguments do not persuade me to reconsider my interpretation of *Monterey Plaza Hotel*. *Ali* indicates that a defendant need not take property "directly from" the victim to cheat the victim of property. As *Pasquantino* explains, both taking property directly from a victim and failing to give property owed to a victim equally count as cheating the victim out of property. This point is consistent with, and does not abrogate or address,[2] *Monterey Plaza Hotel*'s requirement that the property deprivation be "acquisitive" and involve a "wrongful transfer[] of property from the victim to the wrongdoer." 215 F.3d at 927. Failing to transfer property owed to a victim is acquisitive because it involves keeping property owed to another for oneself. Neither *Ali* nor *Pasquantino* shows that merely causing property loss suffices to "obtain" the property under the wire fraud statute.

But with the benefit of now-more-comprehensive briefing by the Government, I agree that the indictment's factual allegations support the inference that Boruchowitz intended to "obtain" Evans's position. The indictment alleges that Boruchowitz intended to obtain a board position. ECF No. 1 at 4. A commonsense inference is that Boruchowitz intended to obtain the board position to exert control over the VEA, which could include replacing the VEA's CEO (Evans) with a person of his choosing. This fact suffices to support the allegation that

---

[2] I may disregard circuit precedent only if it is "clearly irreconcilable" with intervening higher authority. *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1072-73 (9th Cir. 2018). The "clearly irreconcilable" test is a "high standard," and "it is not enough for there to be some tension between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to cast doubt on the prior circuit precedent." *Id.* (simplified). Because I can apply *Monterey Plaza Hotel* "without running afoul of" the Supreme Court's holding in *Pasquantino*, I "must do so." *Id.* at 1073.

Boruchowitz intended to deprive Evans of her job and, by taking the board seat, put someone else in her position. So assuming for the sake of argument that Evans had a property interest in her employment as CEO, this property deprivation is sufficiently acquisitive to satisfy the obtaining requirement under *Monterey Plaza Hotel*. Now that the Government has offered a more thorough explanation of its theory, it would be manifestly unjust to maintain my prior holding.

Although I now find the indictment alleges Boruchowitz intended to obtain Evans's job from her, the indictment still fails the "convergence" requirement under *United States v. Lew*, 875 F.2d 219 (9th Cir. 1989).[3] Under *Lew*'s convergence requirement, the schemer must intend to deceive the same person who the schemer intends to cheat. ECF No. 79 at 9. Applying the convergence requirement to this case, I concluded that, as to Evans's job, the indictment failed convergence because "the person Boruchowitz intended to cheat (Evans) was not the person that Boruchowitz intended to deceive (either the VEA board or VEA members)." *Id*.

The Government does not dispute that the indictment does not allege that Evans was both deceived and cheated. And at the hearing on the motion, the Government conceded that Evans

---

[3] The Government's motion for reconsideration does not persuade me to ignore *Lew*'s convergence requirement in evaluating a Rule 12 motion. The Government states that though it addresses convergence under *Lew*, it "does not concede that convergence must be pleaded to meet the requirements of Rules 7 and 12." ECF No. 87 at 9 n.11. The indictment need not list convergence as a separate legal element of wire fraud, but the facts in the indictment must be sufficient to find that convergence is satisfied. *See United States v. Laedeke*, No. CR 16-33-BLG-SPW, 2016 WL 5390106, at *4 (D. Mont. Sept. 26, 2016) (dismissing indictment for failure to state an offense because the factual allegations failed to satisfy convergence under *Lew*); *United States v. Thompson*, No. CR19-159-RSL, 2022 WL 834023, at *4 (W.D. Wash. Mar. 21, 2022) (denying motion to strike allegations in an indictment, where the indictment stated an offense because it satisfied convergence under *Lew*); *United States v. Holmes*, No. 5:18-CR-00258-EJD, 2020 WL 666563, at *19 (N.D. Cal. Feb. 11, 2020) (dismissing counts for failure to state an offense because the factual allegations failed to satisfy convergence under *Lew*).

could not have been deceived, as she knew the truth.  Therefore, convergence is satisfied only if Boruchowitz intended both to cheat and to deceive the VEA (her employer).  The question then is whether, according to the indictment, Boruchowitz intended to cheat the VEA of money or property by getting Evans fired from her CEO position.  In other words, if Boruchowitz had succeeded in the scheme to deprive Evans of her job, would he have cheated the VEA of money or property?

In previous briefing, the Government asserted without further discussion that "Evans's job was property and money to VEA because VEA employed Evans." ECF No. 72 at 6.  In its motion for reconsideration, the Government finally argues more extensively that the VEA has a property interest in Evans's employment and that the scheme sought to both deceive and cheat the VEA, satisfying convergence.  According to the Government, the VEA's property interest was the "intangible right" to "pay a salary to Evans . . . in exchange for [her] work." ECF No. 87 at 5, 7.  The Government argues that this right to pay salaries "does not derive from the right to control assets" but from "a contractual right to spend money." *Id.* at 12 (citing *United States v. Sorich*, 523 F.3d 702, 713 (7th Cir. 2008)).  Boruchowitz responds that there is no convergence because the party whom Boruchowitz allegedly intended to deceive (the Nye County Court) is different from the party whom Boruchowitz allegedly intended to cheat (Evans). ECF No. 86 at 7.  He also argues that the Government's "new argument" is a right to control theory prohibited by *Ciminelli v. United States*, 598 U.S. 306 (2023). *Id.* at 11 n.6.

The Government's intangible "right to pay a salary" theory maintains that the right to control an asset (money in the form of a salary) is a property interest.  But *Ciminelli* prohibits recognition of intangible interests unconnected to traditional property interests. *See Ciminelli*, 598 U.S. at 315 (stating that after *McNally*, Congress "revived *only* the intangible right of honest

services") (quotation omitted); *Carpenter v. United States*, 484 U.S. 19, 25-26 (1987) (recognizing "intangible" right to one's confidential business information because it "has long been recognized as property"). The Government's reliance on *Sorich* is misplaced because the property deprivation there was tangible: the defendant "cheated [a] city out of hundreds of millions of dollars" because "the city paid for, and was cheated out of, qualified civil servants." 523 F.3d at 712-13. I am not aware of any authority stating that the right to pay a salary to a particular person is a traditional property right. For these reasons and those outlined in the dismissal order, I am not persuaded that this intangible right to pay a salary in exchange for labor is a traditional property interest. *See* ECF No. 79 at 13-15.[4]

Later in its reply brief, the Government claims that Boruchowitz's alleged deceit "was intended to divert the intended payment of VEA's salary money away from its intended recipients" and consequently "harmed VEA economically." ECF No. 87 at 12; *cf. id.* at 1 ("The Indictment properly pleaded the deprivation of an intangible property right."). The Government concludes that the "right to pay salaries was a traditional money and property right" because "VEA suffered economic injury from being deprived of the benefit of its bargain" in employing Evans. *Id.* at 13.

The Government's core contention appears to be that under the alleged scheme, the VEA suffered a tangible economic injury because VEA's salary payments would go to someone

---

[4] The Government also argues that "[u]nder conventional accounting standards, salary and wages are not assets; they are expenses" and that "expensing is not controlling," such that the Government is not alleging that Boruchowitz deprived the VEA of a right to control assets. ECF No. 87 at 12. These are distinctions without a difference. A salary is money that the VEA distributes to whomever it chooses. An "expense" is an "expenditure of money, time, labor, or resources to accomplish a result." *Expense*, BLACK'S LAW DICTIONARY (12th ed. 2024). So whether accountants call a salary an "expense" or an "asset," VEA's alleged right to pay a salary is its right to control its property.

1    besides Evans, which cheats the VEA of its contractual bargain with Evans. I am unpersuaded

2    for two reasons. First, the Government's inference is unsupported. I assume that the

3    Government's reference to "economic injury" means some sort of monetary pocketbook loss.

4    But if so, paying someone else a CEO salary would not necessarily cause monetary loss to the

5    VEA. And the Government does not explain why merely terminating Evans's employment

6    would result in economic loss to the VEA.

7        Second, I cannot read into the indictment what it does not say or necessarily imply. *See*

8    *United States v. Drew*, 722 F.2d 551, 552 (9th Cir. 1983). The indictment alleges that

9    Boruchowitz intended to "deprive Evans of her job." ECF No. 1 at 4. On a commonsense

10   reading of this sentence, Boruchowitz intended to deprive Evans, not the VEA, of property. That

11   would cause economic loss to Evans, not to the VEA. But it is too far a logical leap to infer from

12   the indictment that Boruchowitz intended to cause economic loss to the VEA by causing it to fire

13   Evans. At best, I might infer that Boruchowitz intended to replace Evans with someone who was

14   unqualified for the job. *See, e.g.*, *Sorich*, 523 F.3d at 712-13. But the indictment lacks any

15   factual basis for that inference, and neither the Government's briefing nor its offer of proof

16   explains how a reader of the indictment is to make such inferences based on logic or common

17   sense. If I accepted the Government's theory, I would be left making a "subsequent guess as to

18   what was in the minds of the grand jury at the time they returned the indictment." *See United*

19   *States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979). So I cannot accept the Government's theory

20   because it risks that Boruchowitz could improperly be "convicted on the basis of facts not found

21   by, and perhaps not even presented to, the grand jury that indicted him." *Id.* Therefore, I will not

22   change my decision that the indictment fails to adequately allege that Boruchowitz intended to

23   cheat the VEA of property by inducing it, based on misinformation, to fire Evans.

In summary, assuming Evans's job was her property, the scheme to deprive Evans of her job aimed to cheat Evans, but not deceive her. And that scheme aimed to deceive the VEA, but not cheat it. So the indictment does not satisfy convergence with respect to a scheme to deprive Evans of her job. Therefore, I dismiss the wire fraud charges in the indictment that are based on an intent to obtain Evans's job.

## 2.     Motion in Limine

In the dismissal order, I held that continued at-will employment does not constitute "property" of the employee under the wire fraud statute. ECF No. 79 at 11. The parties did not dispute that Evans's job was at-will, so I concluded that Evans's job was not "property" under the wire fraud statute. *Id.* at 15. Because I am not bound by the four corners of the indictment in ruling on a motion in limine, I granted Boruchowitz's motion in limine to exclude evidence of a scheme to deprive Evans of her job, if offered to show that Boruchowitz intended to obtain money or property by depriving Evans of her job. *Id.*

In its motion for reconsideration, the Government argues that a "job" is "a contractual property right to exchange work for money possessed by Evans and by VEA at the time of the offense conduct." ECF No. 84 at 19. First, the Government argues that whether Evans or VEA could terminate Evans's employment at some time after the scheme "does not make the contract right any less of a property right in their hands at the time of the offense conduct." *Id.* at 19-20. The Government thus contends that Evans's status as an at-will employee is irrelevant because "at the time [Boruchowitz] violated the statute (then and there) the object of his scheme was to deprive her and VEA of the property right each possess (then and there)." *Id.* at 20. Second, the Government argues that the "contractual right to exchange labor for a paycheck" has "long been recognized by the courts as property," citing to several cases in other circuits. *Id.* at 6 n.1; 21 & n.10; *see United States v. Doherty*, 867 F.2d 47 (1st Cir. 1989); *United States v. Granberry*, 908

1   F.2d 278 (8th Cir. 1990); *United States v. Douglas*, 398 F.3d 407 (6th Cir. 2005); *United States*

2   *v. Sorich*, 523 F.3d 702 (7th Cir. 2008).  Boruchowitz responds that the Government is

3   essentially advancing a right to control argument and that none of the caselaw holds that an

4   employee, as opposed to an employer, has a property interest in at-will employment. ECF No. 86

5   at 9-10.

6          I am not persuaded to change my ruling that Evans's at-will employment is not property

7   within the wire fraud statute's meaning.  I must consider whether Evans or the VEA had a

8   property interest at the time of Boruchowitz's alleged scheme to defraud. *See Cleveland v.*

9   *United States*, 531 U.S. 12, 15 (2000) (holding that under the mail fraud statute, "[i]t does not

10  suffice that the object of the fraud may become property in the recipient's hands" and that,

11  instead, "the thing obtained must be property in the hands of the victim").  As detailed in the

12  dismissal order, neither Evans nor the VEA had a property interest in Evans's at-will

13  employment relationship at the time of the alleged scheme to defraud. ECF No. 79 at 9-13.  Had

14  the indictment alleged that Boruchowitz intended to obtain Evans's earned wages, that would be

15  property in her hands at the time of the scheme.  But nothing in the indictment or the parties'

16  briefs, including the Government's offer of proof,[5] suggests that Boruchowitz intended that

17  result.  Nor is it a commonsense inference that an intent to get Evans fired includes an intent to

18  somehow deprive her of wages she had already earned.  Rather, the indictment alleges he

19  intended to get her fired. ECF No. 1 at 5.  Neither the VEA nor Evans had a property right in

20  Evans's future at-will employment at any point.  That is the nature of at-will employment. *See,*

21  *e.g.*, *State v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*, 42 P.3d 233, 240 (Nev. 2002) (en banc)

22  ("It is well settled in Nevada that generally an at-will employee can be terminated *whenever* and

23

---

[5] *See* ECF No. 84 at 23-28.

1  for whatever cause without giving rise to liability on the part of the employer." (quotation

2  omitted, emphasis added)); *Martin v. Sears, Roebuck & Co.*, 899 P.2d 551, 553 (Nev. 1995)

3  (stating that "at-will employment can be terminated without liability by either the employer or

4  the employee *at any time* and for any reason or no reason" (emphasis added)).

5        The cases that the Government cites do not support the proposition that employers and

6  employees have a property interest in every employment relationship, regardless of the terms of

7  that relationship.  I addressed in my prior order why *Doherty*, *Douglas*, and *Sorich* do not

8  persuade me that at-will employment is a traditional property interest under the wire fraud

9  statute. *See* ECF No. 79 at 12-13.  On reconsideration, the Government points to *Granberry*, but

10  there a bus driver deprived his employer of its contractual right to receive a qualified school bus

11  driver by concealing the disqualifying fact that he was a felon. 908 F.2d at 279-80.  Like the

12  other cases the Government relies on, *Granberry* does not address whether at-will employees

13  have a property interest in their at-will employment.  They do not.

14        Therefore, for the purposes of the motion in limine, Evans's at-will job is not Evans's or

15  the VEA's "property" under the wire fraud statute.  For this reason and the reasons supporting

16  dismissal above, I deny the motion to reconsider as to the motion in limine.

17       **B.**    ***Scheme to Obtain a VEA Board Position***

18          **1.**    **Motion to Dismiss**

19        In the dismissal order, I found that the indictment adequately alleged that the sitting

20  board members had a property interest in their seats under the wire fraud statute. ECF No. 79 at

21  16.  But I granted the motion to dismiss as to the VEA board position because "there is a lack of

22  convergence between who is deceived (voters) and who is cheated (seat holders)" under the facts

23  of the indictment. *Id.*  I did so because "to cheat the sitting board members out of their seats and

1    obtain a seat for himself, Boruchowitz would have to deceive the voting VEA members, not the

2    sitting board members." *Id.*

3         In its motion for reconsideration, the Government now argues that Boruchowitz intended

4    to "trick Board members into resigning" so they "could avoid the Member opprobrium generated

5    by the deception of the false arrest." ECF No. 84 at 18. Based on this theory, I find that the

6    indictment's factual allegations are sufficient under Rules 7 and 12. Boruchowitz may have

7    intended to execute his scheme by deceiving the VEA board members (not the voting VEA

8    members) about Evans's conduct, thereby inducing them to resign their term positions under

9    false pretenses. If so, Boruchowitz intended to deceive the VEA board members (with the

10   artifice involving Evans's arrest) and to cheat the VEA board members (by tricking them into

11   giving up their term positions under false pretenses). That satisfies convergence. The

12   Government did not raise this interpretation of the indictment in the initial briefing. It would be

13   manifestly unjust to dismiss the charge now that the Government has offered a valid explanation

14   of its theory. Because the indictment alleges that Boruchowitz intended to deprive the board

15   members of money or property, I will not dismiss the wire fraud charges as to the VEA board

16   position.

17         However, in its motion for reconsideration, the Government also argues at length that the

18   indictment alleges that Boruchowitz intended to deprive the VEA (as opposed to the individual

19   board members) of its money or property by obtaining a board position. The Government argues

20   that the board positions are property held by the VEA members because "the VEA Members had

21   the right to obtain the labor of a Board Member in exchange for salary when they became the

22   target of the deception." *Id.* at 21. And the VEA "would include those in charge of the corporate

23   governance of VEA (VEA Board and VEA Members), the owners of VEA (VEA Members), or

1  any member of VEA with the power to hire or fire Evans." ECF No. 84 at 17.  So the

2  Government argues that convergence is satisfied because the "property holders (VEA, the VEA

3  Members and VEA Board) were targets of the deception (Evans is a criminal) and they held the

4  property that Boruchowitz intended to deprive or obtain (Board Membership)." *Id.* at 19.

5         For the sake of argument, I will assume that if Boruchowitz intended to deceive the

6  voting VEA members about Evans, then Boruchowitz intended to deceive the VEA about Evans.

7  As above, the question then is whether, according to the indictment, Boruchowitz intended to

8  deprive the VEA of money or property by obtaining a board seat through that deception.  In other

9  words, if Boruchowitz had succeeded in the scheme to obtain the board seat, would he have

10 deprived the VEA of money or property?

11        For the reasons stated in the dismissal order, I am not persuaded that this scheme would

12 deprive the VEA of property under any commonsense reading of the indictment. *See* ECF No. 79

13 at 15-17.  As explained above with regard to Evans's job, the "the right to obtain the labor of a

14 Board Member in exchange for salary" is not a traditional property right.  At most it is a right to

15 make an informed decision about who occupies the board seat, but that is not a traditional

16 property interest of the VEA under *Ciminelli*.

17        *United States v. Ratcliff* is instructive. 488 F.3d 639 (5th Cir. 2007).  Ratcliff was charged

18 with mail fraud related to allegedly fraudulent campaign finance practices during his successful

19 re-election campaign for president of the local parish. *Id.* at 641-42.  The Government argued

20 that Ratcliff defrauded the parish of the salary and employment benefits of elected office through

21 misrepresentations to the state ethics board concerning the financing of his campaign. *Id.* at 643.

22 The Fifth Circuit rejected this theory because "[a]lthough the charged scheme involves Ratcliff

23 ultimately receiving money from the parish," the parish would not be deprived of money "by

means of Ratcliff's misrepresentations" because "the financial benefits budgeted for the parish president go to the winning candidate regardless of who that person is." *Id.* at 645. The indictment in that case did not allege, for instance, that the parish was deceived into paying the president's salary "to someone who did not win the election or to someone who failed to meet the parish's minimum requirements for office." *Id.* The Fifth Circuit affirmed the dismissal of the indictment, concluding that "[t]he misrepresentations simply did not implicate the parish's property rights" under the mail fraud statute. *Id.* at 645-46; *see also United States v. Turner*, 465 F.3d 667, 680 (6th Cir. 2006) (rejecting a "salary theory" in a similar election fraud case because "the relevant salary would be paid to someone regardless of the fraud" such that the citizens electing the official "have simply lost the intangible right to elect the official who will receive the salary").

 *Ratcliff* is particularly persuasive in light of *Ciminelli*. For just as *Ciminelli* held that not all misrepresentations that facilitate getting a contract constitute wire fraud, *Ratcliff* held that not all misrepresentations that facilitate winning an election constitute wire fraud, even if the misrepresentation violates state law. In short, as the Ninth Circuit has held, "even if misrepresentations result in money or property changing hands, they still may not necessarily constitute fraud." *Milheiser*, 98 F.4th 935, 942 (9th Cir. 2024).

 Here, Boruchowitz allegedly intended to have himself installed as a board member. But as in *Ratcliff*, Boruchowitz's alleged deception did not center on his qualifications or on misrepresenting who won the vote. The deception instead centered on whether Evans was properly arrested for embezzlement. Even if Boruchowitz's alleged deceptions are part of a causal chain that results in Boruchowitz collecting a board member salary, that does not by itself constitute wire fraud. *See id.* So the indictment's factual allegations do not show, nor is there a

commonsense inference, that Boruchowitz intended to cheat the VEA out of property by obtaining a board seat.[6]  For that reason, this theory also does not satisfy the convergence requirement under *Lew*.

In summary, the indictment adequately alleges that Boruchowitz intended to cheat the board members of money or property by obtaining a board position.  But it does not adequately allege that Boruchowitz intended to cheat the VEA of money or property by obtaining a board position.  On the narrow ground that Boruchowitz's scheme allegedly aimed to cheat the board members of money or property, I grant the motion to reconsider and deny the motion to dismiss the wire fraud counts in the indictment.

### 2.    Motion in Limine

In the dismissal order, I granted the motion in limine as to the VEA board position for the same reasons that I granted the motion to dismiss as to the VEA board seat. ECF No. 79 at 17. Because I reverse my prior dismissal of the wire fraud charges related to the VEA board seat, I also reverse myself and deny the motion in limine as to the VEA board seat.

## III.    CONCLUSION

I THEREFORE ORDER that the Government's motion for reconsideration **(ECF No. 84) is granted in part**.  The motion is granted in that my previous order **(ECF No. 79) is rescinded**

---

[6] The Government also argues that the board positions are property held by the VEA Members because "the position controls the strategic direction of VEA," including the "right to spend and collect money." ECF No. 84 at 21-22.  The Government claims that "[t]he power to spend or collect money is property." *Id.* at 18.  But the Government's caselaw cited above does not support this assertion, and persuasive caselaw says the opposite.  A parish president may have authority to control parish funds, but the mere fact that the president engaged in deception on the way to becoming president does not support a wire fraud conviction. *See Ratcliff*, 488 F.3d at 645-46.  That a position comes with certain powers does not make the position the employer's property under the wire fraud statute.

to the extent that (a) it dismissed counts two through five of the indictment and (b) it granted Boruchowitz's motion in limine to exclude evidence of a scheme to obtain a VEA board position.  The Government may proceed with the wire fraud charges only as to Boruchowitz's scheme to obtain a VEA board position.  The motion for reconsideration is denied in all other respects.

DATED this 21st day of February, 2025.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE