SIGAL CHATTAH
United States Attorney
Nevada Bar No. 8264
STEVEN W. MYHRE
Nevada Bar No. 9635
JUSTIN J. WASHBURNE
Assistant United States Attorneys
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Tel: (702) 388-6336
Steven.Myhre@usdoj.gov
Justin.Washburne@usdoj.gov

*Attorneys for the United States.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DAVID E. BORUCHOWITZ,<br><br>　　　　Defendant. | Case No. 2:23-cr-00149-APG-BNW<br><br>**Government's Response to Defendant's Sentencing Memorandum.**<br>**ECF No. 104.** |

**Certification: This Response is timely filed under Local Criminal Rule 32-1.**

　　　Defendant's Sentencing Memorandum takes a passive-aggressive approach to acceptance of responsibility, professing remorse for a self-serving characterization of the offense conduct that all but erases his responsibility, while giving the back-of-the-hand to his victim and misdirecting from the most egregious offense conduct – the fraud. This approach ignores the stipulation of fact he signed in his Plea Agreement and to which he admitted when entering his plea – specifically that he arrested Evans without probable cause as part of a scheme to defraud VEA's Board of Directors. Whatever the perceived

value of this strategy, the government is not bound to recommend acceptance of responsibility in light of it and may seek a breach of the plea agreement if it persists through the sentencing hearing.

**Defendant Ignores His Guilty Plea and His Admitted Intent to Deceive**.

Defendant admits that he omitted credibility evidence that vitiated probable cause from the search warrants and Declaration but chocks that up to losing track of "his oath as an officer" and being "too focused on being a 'star' cop." He contends that the unlawful arrest was not done out of "malice" but from a misguided sense of self-importance and asserts that "at its core, the arrest is nothing more than a criminalized *Brady* violation" that "is not [ ] unfamiliar to law enforcement officers." He then devotes a considerable amount of space in his pleading referencing a report of a Renee West to assert that he was right about the "fundamental premise" of the investigation – that Evans had work done at her house that she did not pay for.

Setting aside the notion that "having work done at your house that you did not pay for" is not a crime – let alone an embezzlement – none of this comports with his plea or the Plea Agreement in this case. In pleading guilty to Count Four, he admitted to arresting Evans without probable cause as part of a scheme to defraud and that he did so *with the intent to deceive the VEA Board of Directors.* ECF No. 95, ¶ 10 at 8.

His claim *now* that he arrested Evans without malice is double-speak. He cannot, on the one hand, admit to arresting Evans as part of a scheme to deceive the VEA Board and, on the other hand, contend that he was simply was an overzealous cop acting without malice. Both cannot be true at the same time. He either intended to deceive the

Board by arresting Evans without probable cause or he did not. He cannot have it both ways.

Similarly, his contention that the unlawful arrest was nothing more than a "criminalized Brady violation" is double-speak. In pleading guilty to Count One, he admitted that he willfully deprived Evans of her rights under the Fourth Amendment; that is, he intended to deprive Evans of her rights under the Fourth Amendment. ECF No. 95, ¶¶ 3, 10. He cannot, on the one hand, contend that the violation was a collateral consequence of his failure to disclose Johnson and, on the other, admit that he intended to deprive Evans of her constitutional rights. Both cannot be true at the same time. He either arrested Evans with the intent to violate her rights under the Fourth Amendment, or he did not. He cannot have it both ways.

The government has already demonstrated in detail the nature of the fraud and false arrest in this case, both in its Sentencing Memorandum and in its pretrial pleadings before this Court – the "fundamental premise" of Boruchowitz's "investigation" was to arrest Evans as part of a scheme to defraud. It is not incumbent on the government at a sentencing hearing to now disprove the defendant's double-speak any more than it is incumbent on this court to revisit the defendant's guilty plea at the sentencing hearing based on double-speak. Nor is the government required to debate the defendant as to the meaning of buried power lines versus guy wires or whether Renee West's post-arrest interview is relevant to anything dealing with probable cause before the arrest. Those are red herrings designed to divert attention away from the defendant's mindset at the time of arrest, a mindset to which he has already admitted. The government, and the Court, can rely on the defendant's guilty plea to adjudge sentence.

**Ignoring An Intent to Deceive Vitiates Acceptance of Responsibility.**

Further, the defendant cannot maintain that the government has agreed to a two-level reduction for acceptance of responsibility. It did not. The Plea Agreement makes clear that the government would recommend a two-level reduction unless the defendant "denies involvement in the offenses or provides conflicting statements regarding defendant's involvement or falsely denies or frivolously contests conduct relevant to the offenses." ECF No. 95, ¶ 13.[1] Defendant's present assertions as to his non-malicious mindset during the offense conduct meet all those contingencies.

If the defendant persists throughout sentencing that he did not act with malice in arresting Evans, the government will argue that the Court should **not** apply a two-level reduction for acceptance of responsibility. *Id.* If the Court does not apply the two-level reduction, the defendant's total offense level under the Guidelines becomes Level 12, a Zone C offense for which a period of imprisonment is required under the Guidelines. See USSG § 5C1.1(d).

Further, should the defendant maintain this position throughout the sentencing hearing, the government will seek a declaration of breach of defendant's obligations

---

[1] Several of the defendant's bullet point statements regarding conduct relevant to the offenses are frivolous. For example, the defendant claimed he had developed "viable proof" about payoffs related to the former CEO's alleged sexual harassment and "appropriately developed sources" including a local TV station employee. ECF 104 at p. 18-19. The informal conversation between the defendant and the local TV station producer consisted of second-hand gossip and rank speculation, was secretly recorded by Boruchowitz, and occurred immediately after he had recorded a televised interview criticizing Evans and VEA. ECF 103 at p. 6. Not only does this conversation fail to resemble a law enforcement interview or undercover operation in any respect, but the TV producer also clearly stated that Evans was not involved in the illicit conduct he was speculating about. The defendant has now pleaded guilty, and this conversation is preserved and available, so this mischaracterization of his relevant conduct is especially improper given the stage of the proceedings.

under the Plea Agreement, the obligation being to stipulate to the facts agreed to in the Agreement. *See* ECF No. 95, ¶¶ 1.b and 52. The Plea Agreement being in breach, the government will recommend a Guidelines sentence of 16 months' imprisonment. The government would maintain that in light of the defendant's failure to accept responsibility for his conduct, a Guidelines sentence of 16 months' imprisonment is not greater than necessary when considering the Section 3553a Factors, for all the reasons explained in the Government's Sentencing Memorandum.

**Restitution is Mandatory**.

The defendant's failure to accept responsibility for his fraudulent conduct carries over into his analysis of the MVRA where he claims that Evans is not a victim under the MVRA and thus the Court cannot award restitution in this case. The defendant tries to separate Count One (False Arrest) and Count Four (Wire Fraud) and claims that restitution is only permissible for Count Four, but this argument ignores the fact that the defendant's false arrest of Evans (Count One) was the very means by which he defrauded the board members of their seats (Count Four).

As stated above, the defendant has pleaded guilty to defrauding the VEA Board and as a part of that scheme, arrested Evans without probable cause and issued press releases broadcasting her false arrest. The government has adduced proof that the arrest was used to advance the claim by Johnson that the VEA Board had failed in its duties and thereafter, the Board fired her. For all the reasons explained in its Memorandum, the government has shown that Evans firing not only flowed directly from the scheme but was a foreseeable result of the scheme. *See* 18 U.S.C. § 3663A(a)(2) ("victim means a person directly and proximately harmed as a result of the commission of an offense").

The MVRA is not limited solely to a fraud theory charged in the Indictment and, as such, awarding restitution to Evans does no violence to the Court's pretrial rulings. By arguing that the MVRA is limited by theory of the indictment, the defendant conflates the definition of victim under the Wire Fraud statute, which requires convergence, and the definition of victim under the MVRA, which does not. This argument imports a new requirement into the text of the MVRA: to qualify as a victim, a person must meet the requirements of the MVRA and *also* be the victim of the statute of conviction. Defendant does not provide any authority supporting this novel interpretation of the MVRA.

The MVRA requires only that Evans be "directly and proximately harmed" as a result of the offense. 18 U.S.C. § 3663A(a)(2). The "'basic question that a proximate cause requirement presents is whether the harm alleged has a sufficiently close connection to the conduct at issue.'" *United States v. Luis,* 765 F.3d 1061, 1067 (9th Cir. 2014) *(quoting Roberts v. United States*, 572 U.S. 639, 645 (2014) (internal quotation omitted); *see also U.S. v. Gamma Tech Indus.*, 265 F.3d 917, 928 (9th Cir. 2001) (stating that the Ninth Circuit has "approved restitution awards that included losses at least one step removed from the offense conduct itself").

The cases cited by the defendant in support of his new, restrictive interpretation of the MVRA actually prove the opposite proposition; Evans is a victim under the MVRA.[2] For example, in *United States v. Luis*, the Ninth Circuit held that the district

---

[2] Defendant cites *U.S. v. Luis* in support of his statement that "Because the Indictment would not survive if AE were the victim, it is entirely anomalous for her to be compensated as a victim for restitution purposes." ECF 104 at p. 29. However, the plain language of *Luis* shows that it cannot be construed to support this statement. In *Luis*, Chase Bank is awarded restitution under the MVRA even though it is not a party to the original fraudulent transactions and could not have been the victim in the indictment.

6

court properly found that a third-party loan purchaser who had purchased a loan obtained under fraudulent pretenses was a victim. 765 F.3d at 1067. In *Luis*, the defendant plead guilty to engaging in monetary transactions in criminally derived property under 18 U.S.C. §§ 1956(h) and 1957. *Id.* at 1066. The defendant used proceeds of drug trafficking to make the downpayments for two pieces of real property, lying about the source of the funds and the applicant's employment history. The third-party loan purchaser, JP Morgan Chase, purchased the loans before the defendant's fraud was uncovered. Selling and purchasing defaulted loans is foreseeable, so Chase was a properly awarded restitution under the MVRA. *Id.* at 1068.

      Chase was not involved in the initial fraudulent transactions, but the bank was still a victim under the MVRA. Here, the false arrest of Evans was an integral part of the defendant's scheme to defraud the board. Her connection to the wire fraud scheme is much closer than that of a third-party loan purchaser who buys loan after a fraud is perpetrated. Additionally, just as it is foreseeable that a bank would purchase defaulted loans, it is foreseeable that the defendant's false arrest of Evans and press releases defaming her would result in her termination and hamstring her future earning potential. Indeed, defendant's conduct need not be the "sole cause of the loss" so long as any intervening causes are "directly related to the defendant's conduct." *U.S. v. Gamma Tech Indus.*, 265 F.3d at 928. In this case, VEA's decision to terminate Evans was directly related to the false arrest and subsequent media coverage. That her arrest for embezzlement would lead to her firing was certainly foreseeable, and, in fact, her termination and the replacement of VEA's board were both express goals of the defendant's scheme.

As stated in its Sentencing Memorandum, the government will seek to adduce further evidence as to causation, loss and loss amount at hearing.

Respectfully submitted,

SIGAL CHATTAH
United States Attorney

/s/ *Steven W. Myhre*
/s/ *Justin Washburne*
STEVEN W. MYHRE
JUSTIN WASHBURNE
Assistant United States Attorneys

Dated: July 10, 2025.

8